Good morning, Your Honors. May it please the Court, Marina Torres, on behalf of Appellant Defendant Tungsten Heavy Powder, this is a dispute over attorneys' fees and costs that originated over the settlement of a false claims act, litigation between the party. And it is the defendant's position that the District Court erroneously awarded the plaintiff fees, costs, and expenses that were simply not provided for under this statute. And you were reviewing this for abuse of discretion? Correct, Your Honor, yes. Do you agree that we owe substantial deference to the District Court in its finding, right? It is a substantial deference, Your Honor, but as is more elaborated in the Gates decision as well as Sealy, it's not complete. And there is a requirement as well that the District Court elaborate it concise and correct. Well, the District Court did, was pretty elaborate, I mean, it was quite specific about everything that you said both the first time and the second time in its motion to reconsider, in the motion to reconsider. I mean, I think we've seen a lot less in terms of judicial explanation for fees. This is pretty specific. I have no doubt, Your Honor, but I would add, I would disagree respectfully in that I don't think we would argue that it wasn't thorough. And here again, I would refer the Court to both the Gates and Sealy decision, both of which remanded on the basis of there just simply not being enough in the District Court record. What would be the standard then? So here, the District Court addressed your concerns, reduced the fee award. Do you think the District Court needs to address the billing entries individually, line by line? Your Honor, not line by line, but at the very least, for instance, I believe we mentioned in the underlying paper that there were at least 140 entries that just included the billing, the billing entry was simply reviewing documents, but without any discussion of what documents. And given that in this case, there are interrelated claims, there are interrelated, there are other related actions. But he said that, I thought the District Court said that you can still get recovery even for the interrelated claims here. Yeah, our position is that the ITAR cases, the ITAR discussion is not related. It wasn't even included in the complaint, Your Honor. But what, the ITAR claim, there was only one cause of action. Correct. It was essentially that in general, that there was fraud in the way these claims were done. And then they had examples as to what kinds of fraud. And the case law says that even if you lose on a claim, sometimes you can get fees for it if it, and certainly if it isn't resolved. So what difference does it make? It was in the case, and it wasn't affirmatively lost, and it was part of the mix. And it wasn't even a separate claim. I just think you're on exceedingly weak ground in saying that they couldn't get fees for litigating something that was part of the mix, wasn't lost, and was, and then there was a settlement. Well, Your Honor, my position here is that the ITAR claims were just not as interrelated as plaintiffs is arguing that they are. For instance, they did mention that, I think the language they used... I mean, we don't know this, but the settlement could have been generated by the fact that whether they were interrelated or not, they were at least somewhat cognizable, and, you know, so it was one of the things they were settling. They didn't have to say that. What difference does it make what they said? Because it has to be intertwined, and that's a position as a plaintiff. Why does it have to be intertwined? Because otherwise it's not, it's not in the complaint, it's not part of the settlement. It's mentioned only twice in the complaint. Only two passing references to ITAR. It wasn't dismissed. They weren't told they couldn't litigate it, right? Not my understanding, no. That's correct. But there's only two passing references to it in the complaint, even though the plaintiff is saying the very reason why these should be included in the fee analysis are because they're so intertwined. If they're so intertwined, why is it, for example, that only six out of the 15 ITAR-related entries occurred actually prior to the complaint, and there's only two entries that occurred after the start of negotiations between THP and the government, and those entries totaled one and a half hours. So their position is that they cannot be distinguished from the FCA claims. Suppose it could be distinguished, but nonetheless, it was in the case, it was not, it was not dismissed, it was, which might not even matter, but it wasn't. So what difference does it make? The issue, Your Honor, is that because of the vague descriptions, because of the block billing that includes both ITAR, the defamation claims, as well as the FCA claims, it is unclear and it is impossible, our position, is that it's impossible for the district court to have reviewed the entries and to have decided the way that they did. But if it doesn't matter whether they're related to ITAR, then what's the difference? I'm sorry, Your Honor? If the ITAR investigations or discussions or whatever are compensable, then it doesn't matter whether you can separate them out because you don't have to separate them out. Correct. And our position is that there just wasn't the thorough analysis of the time entries at the district court level to come to that conclusion. You know, as I mentioned, there weren't, both the ITAR and the defamation claims are included in several time entries that also refer to the FCA claims. And to that extent, we just don't believe that these vague descriptions... But you're proceeding on the premise that the ITAR claim work is not compensable, and I don't see the basis for that. The basis is that it wasn't in the settlement. It was only to... What do you mean it wasn't in the settlement? We don't know what was in the settlement. We only know it was in a press release. Well, the settlement included six specific contracts with relation to the FCA claims. It was very specific. And again, our position here is not even that we can't include any time entries, for instance, related to contracts beyond those six contracts. That's not our position. We understand that. But the ITAR claims, two passing references in the complaint, and yet there are several time entries here that plaintiff is arguing are completely intertwined, cannot be distinguished from FCA claims. And passing examination of the time entries suggests otherwise. The vague and the block-billed entries just could not have allowed the district court to determine whether these entries were appropriately included in the fee request. Multiple entries have both FCA and ITAR claims, as we mentioned. And our position is that, as a result, the district court just didn't reach the required concise but clear explanation as to why the plaintiffs were awarded the fees, as is required by Hensley and its progeny. And again, here I would refer the court back to both Gates and Seeley. Obviously, in Gates, the court held that it was an abuse of discretion because the district court had failed to conduct an independent review of the bills and the fee application. Well, but that's not true here. It did an independent review. Well, there's actually another similarity, Your Honor. And I believe it was, I think it was in Gates, if I remember correctly, where there were statements in the order, as there are here, that the district court had conducted an independent review of the fee application. But the evidence in Gates, and we would argue the evidence here, suggests that they didn't. And that was exactly the case that happened in Gates, and I believe it happened in Seeley as well. I mean, I could go back and look at that, but I've got to be honest, reading the district court's opinion, he really looked through, he cited some of the examples, he explained how none of them were above, you know, three hours. This wasn't, this was pretty much in conformity with how bills would come out. Well, Your Honor, again, I would respectfully disagree. For instance, there was one example that we mentioned before, I think in our paperwork, about the overlap, there was a time entry relating to complaint drafting, and complaint drafting for the defamation case. And the plaintiffs responded, and it gave an explanation in their appellate papers. That discussion, that back and forth, with all due respect, shouldn't be occurring at the appellate level. That's a discussion that should have been, that should have happened at a hearing, at the district court level, where we would have had the time to go through the time entries, and bring to light, again, the 140 entries for documents, for review of documents that could have been related to any of the issues that were discussed here, as well as any other related cases. Do you want to reserve time for your final question? I would, Your Honor. Thank you. Thank you. Ms. Sanderson. Good morning, Your Honors. May I please report? I'm Jessica Sanderson, and I'm counsel for the appellees. We're the relators, or the key town plaintiffs in the False Claims Act case below. I do have a prepared opening, which I'm going to get to in a minute, but I cannot resist changing my complete beginning to say that I'm actually shocked to hear her say that there were two passing references to ITAR, which for my whole life I've been saying ITAR, in the complaint, because I just did a quick find in the complaint that's in the record, and ITAR is mentioned 133 times. That is far more than two passing references. That is in the record, and you can look. I'll read one paragraph. Is that what this case depends on, is whether those, you would agree that if that were not related and couldn't be considered, then we would have to remand it for a parsing out? One of their objections, I'm not sure I understand your question. If the billing for the ITAR claims was not properly recoverable, then you would agree that we would have to remand this for the district court to parse out which camp each of these fees come into? I guess if you're asking if as a matter of law that was not recoverable, and the judge did award fees for just based on that, then yes, in that hypothetical, those fees would be improper, but that's not at all what happened here. The judge looked at the complaint, looked at the work that went into the complaint, looked at the timesheets, and the ITAR claims are central to the argument. There's what's called a false certification claim, a theory of liability under the False Claims Act, and a false certification of compliance with ITAR, which I'll start to say it that way now, would give rise to a False Claims Act case, and that was part of the complaint, and that fed into the judge. The judge, what's important to focus in on here is exactly what you said, is the standard of review, the deferential standard of review. He looked at it. He did not ignore their argument. He looked at it twice, and he looked at the complaint, he looked at the timesheets, and he decided he could tell by the entries in the contemporaneous timesheets what they were working on, and I would also remind the court a few things related to this matter. Number one, the settlement agreement is not in the record, and so as Your Honor correctly pointed out, we don't know what the settlement agreement consisted of. We don't know the DOJ's reasoning, and how much ITAR fueled into that, and I would also add this False Claims Act case. If you were to parse this out, how much of this $471,000 was related to the ITAR claims? It would not be a huge amount, and it would not even come close to, the judge already applied a discount to some of its claims, so it's already been accounted for, and it wouldn't change the award very much. But in any event, under the case law, if it was alleged, does it matter whether it was part of the settlement, actually, or whether it's ascertainable whether it's part of the settlement? You don't parse out an attorney's fee award in that way at all. They did the work on the case, they submitted the hours, and the judge, based on all of the facts and evidence in front of it, this is not viewed, the timesheets aren't viewed in the background. The judge viewed the complaint, the judge knows the work that went into, may I remind you, a successful KETAM action. The government not only recovered more than $5.6 million from the appellant, who's here seeking relief today, for fraud on the federal government, on our Department of Defense, for a fraud that put our troops in harm's way. That was due to Relator and Relator's Counsel's efforts in a successful KETAM action. Work goes into that. They convinced the government to intervene. Work goes into that. And not only that, I would add, the former CEO and owner of the company was criminally indicted. He pled guilty to conspiracy to defraud the U.S. based on ITAR violations. And so the government, the Department of Justice, has a right to pursue alternative remedies, as this court well knows. And so while this case and the press release may have focused on the False Claims Act cases for numerous areas of fraud that the appellant committed, they had another case, a parallel investigation that led to a criminal indictment and ultimately a conviction. But as I understand it, insofar as there were HR claims here, they were part of the False Claims Act. Absolutely, they were. Right. They were aspects of the False Claims Act. Absolutely. But in a parallel track investigation, they were also pursuing criminal claims. I think your honors are probably familiar with the Department of Justice's focus and the recent memo that has come out to focus on individual liability and individual responsibility. And so it's not surprising to me at all that the Department of Justice focused in this key time civil action on certain areas of the False Claims Act and decided to focus in a criminal action on the ITAR claims, to hold the individual accountable. Just because I'm curious, what ever happened to the Wyoming case? The Wyoming case, actually all of the claims against Volkov Law Group were dismissed. And against, there were six defendants, well there's more than six defendants, some remain in the case. But the relater, GTP, who is an appellee here, the claims were thrown out against it. And Mr. Volkov and the Volkov Law Group, the claims were thrown out against it. So not surprisingly, they've moved to reconsider that opinion. There's no basis for their motions for reconsideration. And what they've done here is what the Ninth Circuit and the Supreme Court has expressly warned against, which is creating this second litigation, this second sideshow. And I would submit this is the third sideshow. I mean, I can't imagine a greater waste of judicial resources than to remand this. If they win on this appeal, it goes back to the district court to say, look, not once, not twice, but for a third time, at the same time sheets, and consider the same arguments you've already considered and rejected twice. Are we really going to make them do it a third time? Maybe the district court should have had a ten-page opinion instead of six. Exactly. I mean, how much is enough? And it's the same. How much of the court's opinion is enough detail? I would submit, and I think Your Honors can weigh the opinions. That's why I think it all turns on whether, well, maybe it doesn't, because it's, even if the ITAR were distinguishable, if they weren't recoverable, that seems to be their best argument. Absolutely every fee in this case was recoverable. The standard is whether it was reasonable. Was it reasonably incurred in the prosecution of this case? And there's no evidence, and there's no reason to believe that it was not reasonable, that every single time submission was reasonable. And in fact, I would add, for this court to take a look at it, it's not even a question of whether it's reasonable. It's was the judge's decision that it was reasonable illogical or irrational? I mean, those are the standards, the deferential standards that comes in cases, some of which, Your Honor, specifically you were on the panel in a case I think was called Schoenberg. And recently, actually in October of 2022, actually while this was pending, the standard is repeated. Again, the standard in my briefs, it's not just deference, it's a great deal of discretion to determine the reasonableness of the fees. This judge was in the best position to do it, and he did it. He did not issue a one-page order. He did not issue something that just said, give them these fees. And he, importantly, did not accept the submission. He went through and denied some fees, which we disagree with, but we certainly wouldn't say it was illogical or irrational. So what did the district judge know about the relationship, if any, between the Pennsylvania action and the Keytown action? Because your opposing counsel has suggested that the explanations about why counsel in this case were reviewing documents or readings in the other case was not presented to the district court. I mean, it's clear from his order that he knew they were separate counsel in the two matters. But what did the district judge know about these two cases? Well, the motion for reconsideration that they filed for his second opinion, that was entirely based on the Wyoming litigation. I'm talking about the Pennsylvania litigation. The Pennsylvania defamation action, that was discussed in the motion papers, and so that was before the judge. He considered it on the papers, where we explained that shortly after the Keytown complaint in this case in California was filed, the defendant, the appellant here, filed a defamation case in Pennsylvania against the relator. It was a retaliatory action that was designed, it was based specifically on the allegations in the Keytown case. It was saying... It wasn't based, I actually looked at the complaint. It wasn't based on the fact that they brought a lawsuit, but it was based on the information in it being given to customers or something. Right, it was saying that the defamation was talking about the lawsuit, was talking about the fact that they were going to expose their fraud to the federal government. So there was very clear overlap, and it would be entirely remiss for Volkov Law Group, for any counsel not to be aware of what's going on with their client in multiple forums. I mean, because otherwise, to be competent to represent your client, you have to understand all the cases that are going on. And the overlap there is obvious, because they wanted to... They were deposing the same, the very same witnesses that Volkov Law was bringing to the Department of Justice for interviews. And the case was under seal, and there was a risk of violating the seal order. And as well, that there was a risk of revealing documents and information that would jeopardize the government's investigation. So the Volkov Law Group had to be aware of that. I would add, there's a great risk in not being aware of litigation involving the same parties, because my counsel here, who I have the utmost respect for, she filed a document in this case, number four, in which she said, there are no related proceedings. And when I saw that, I was shocked. And I don't think she was making a misrepresentation to the court. I think she wasn't aware that there were related proceedings, because then you fast forward to the opening brief, and they have a full heading that talks about the related proceedings. So of course there were related proceedings, and I see that my time is about to run. Okay. Thank you, counsel. We'll give a minute for rebuttal. Thank you. Thank you, your honors. And here I'll focus actually on, I'll try to focus it on one or two points. My opposing counsel mentioned that the judge did look at the costs and actually rejected costs. That's only somewhat true. The judge rejected only the costs and fees related to collateral litigation. The judge did not actually review any of the attorney's fees or the time entries. He didn't. I'm sorry? He said he reviewed it all. Why do you think he didn't? Well, again, I think the most parallel case here is the Ninth Circuit's previous decision in Gates. The record just doesn't suggest, it's on papers, quite frankly. There was no hearing where we could have. It's on papers, but he was told a lot about specific entries. He said he looked at them. It appears he did look at them. Why do you think he didn't look at them? Because there's still open questions as to those entries, your honor. Sorry, what? There's still open questions as to those time entries that weren't answered in any of the court's previous orders. I mentioned before, the entry- He said he didn't look at them. That's an accusation of essentially misrepresentation. It suggests, your honor. Your honor, yes. As in Gates and in Seeley as well, the evidence, in our opinion, suggests that it may not have been as thorough as we would have wanted the opportunity to have in a hearing. And again, here, I think your honors have hit on it. The question isn't whether it's our claims here in the appellate court. It's not whether it's our claims should or should not be included. It's whether the defendants had the opportunity to hear this. Whether we had the opportunity to really flesh this out and whether that was done in an appropriate manner in the district court such that the district court would have had enough information to render the opinion and appropriately award fees. And our position- Because it was alleged in the complaint, as she points out many times, it was one of the- It was an aspect of the FGCA, of the basic cause of action. It wasn't separate. It was a reason why- And so, all you have to know is that it is a basis- It was a basis for the complaint and it was legitimate in the sense that it could have been correct and it wasn't dismissed and it was- And that's it. Under Hensley, that's sufficient. Yes, your honor, but under Gates, the district court is required to independently review the record. But only if it matters. And why would it matter whether the eTAR claims, exactly what time they were spending on eTAR? It doesn't make any difference. Well, it does, your honor, because there's absolutely several- Why? Again, I mentioned that there's 21 entries related to time billed to the defamation matter. There's 15 entries- And similarly with the defamation matter, if you look at the complaint in the defamation matter, you can see that it's basically the same allegations, although with regard to a defamation claim and there are concerns that this complaint is sealed and that one is not and they're trying to get discovery and there wasn't that much time and that should be the end of the story. What else do you need to know? Well, for example, one of the entries is completely, suggests that the attorneys submitted their time entries for helping and assisting in deposition preposition in the defamation case. Right, because there were witnesses who were also relevant to their case. But your honor, we don't know that and that's not in the papers because there was no hearing. And so, your honors, we are not asking here to go into and examine every time entry. The examples that I've mentioned- You just want to do over where it's more exacting. We want the opportunity to be heard. We believe that the law is on our side and again, I would point to Gates and Seeley as the primary cases. I gather you have pretty much forgotten about or are not complaining anymore about the motion to reconsider and this declaration from the former employee and all that. Well, in our papers, we do believe that- You didn't say anything about it and that was a good idea. I decided to focus the limited time that I have on the first point. No, and the limited time is now well over. That's over. Thank you. Thank you very much. Thank you both for your arguments on the case. The case is now submitted.
judges: BERZON, NELSON, BADE